**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

KENNETH GLENN EVANS,                    *

Plaintiff,                              *

v.                                      *            Civil Action No. ELH-22-3073

SGT. SCHULTZ, and                       *
WARDEN DEBRA DARDEN,
                                        *
Defendants.

                                        *
                                       ***

<u>**MEMORANDUM OPINION**</u>

The self-represented plaintiff, Kenneth Glenn Evans, is a Maryland prisoner currently confined at Western Correctional Institution ("WCI"). He initiated this civil rights action by filing a Complaint, pursuant to 42 U.S.C. §1983, against Sgt. Dakota Schultz and Warden Debra Darden, defendants, regarding events that occurred when he was housed at Eastern Correctional Institution ("ECI"). ECF 1.

Construed liberally, the Complaint alleges inadequate medical care and conditions of confinement claims, in violation of the Eighth Amendment. Specifically, Evans alleges that he suffers from chronic asthma, and he was denied medical care following an incident during which mace was sprayed into the recreational room in response to a fight among other inmates. ECF 1 at 2-3. According to Evans, the mace caused him significant breathing problems, including coughing up blood. *Id.* Further, Evans states that he asked to be seen by medical after the mace was deployed, but his request was denied. *Id.* Additionally, Evans alleges that he was exposed to the mace because he was erroneously placed in general population, even though he was being held on a parole retake warrant and had not yet received a revocation hearing. *Id.*

In response, defendants have moved to dismiss or, alternatively, for summary judgment. ECF 28.  The motion is supported by a memorandum (ECF 28-1) (collectively, the "Motion"). Defendants argue that Evans failed to exhaust his administrative remedies.  ECF 28-1 at 6. Further, they contend that Evans failed to state a claim, that they did not fail to provide adequate medical care, and that Evans's housing assignment in general population did not violate his constitutional rights.  *Id*. at 10-15.

Defendants also submitted several exhibits, including a copy of the Investigator Summary (ECF 28-2); the Declaration of defendant Schultz (ECF 28-3); Evans's sealed medical records (ECF 28-4, ECF 29); the Declaration of Amy Gragg, Correctional Case Management Manager at ECI (ECF 28-5); a copy of Evans' Request for Administrative Procedure ("ARP") (ECF 28-6); the Declaration of Jason K. Derr, Acting Litigation Coordinator at ECF (ECF 28-7); the Declaration of Kristina Donnelly, M.A., Special Assistant to the Director of Patuxent Institution (ECF 28-8); and a copy of g4

a blank ARP form (ECF 28-9).

The Court notified Evans of his right to respond to the Motion.  ECF 30.  He filed a response in opposition.  ECF 32.  Defendants replied.  ECF 34.  Subsequently, Evans filed several more documents in which he reiterates his arguments; the documents were docketed as correspondence.  ECF 37, ECF 38, ECF 41.  In light of Evans's pro se status, I will consider these documents as supplemental responses to the Motion.

The Motion is ripe for disposition.  Upon review of the record, the exhibits, and the applicable law, the Court deems a hearing unnecessary. *See* Local Rule 105.6. (D. Md. 2023). For reasons that follow, I shall construe the Motion as one for summary judgment and grant it in favor of defendants.

## I.  Background

### A.  The Complaint

Evans alleges that on July 29, 2022, at approximately 9:00 p.m., he was in the recreation room waiting to use the phone when a "major fight took place which caused officers to spray mace into the rec. room."  ECF 1 at 2.  Plaintiff claims that he told the officers that he has chronic asthma and COPD, and he takes multiple inhalers for his breathing conditions.  *Id*. at 3.  Moreover, he alleges that he "asked multiple times to be seen by medical" because he "could hardly breathe" after being maced.  *Id.*  Evans asserts that defendant Schultz "was in charge of the unit that shift," and that Schultz told him that he would not be seen by medical because he was not part of the fight.  *Id.*  According to Evans, following the incident, he coughed up blood for several days.  *Id.*

In addition, Evans alleges that he was being held on a parole retake warrant for which he had not yet received a hearing.  Therefore, Evans claims that he should not have been placed in general population.  *Id.*  Evans does not allege any specific conditions related to his housing assignment.  Instead, the crux of his claim appears to be that he would not have been maced had he not been assigned to general population.  *Id.*

Further, Evans states that he filed a grievance regarding the incident, but he did not receive a response.  ECF 1 at 2.  Therefore, he contends that he could not appeal any decision.  *Id.*

### B. Defendants' Response

Defendants argue, in part, that the Complaint must be dismissed because Evans failed to exhaust his administrative remedies.  ECF 28-1 at 9.  With their Motion, defendants have submitted a copy of an ARP dated August 3, 2022, pertaining to the incident in the recreation room.  ECF 28-6.  The receipt is dated August 8, 2022, and stamped: "Dismissed for procedural reasons . . . Additional information is needed to investigate your request."  *Id.*  A notation instructs Evans to "rewrite ARP to include what housing unit you were in at the time of incident. Did you notify a supervisor? What remedy are you seeking?"  *Id.*

Defendants submitted the Declaration of ECI's Acting Litigation Coordinator, Jason K. Derr.  ECF 28-7.  He asserts that a search of the ECI Master Indexes for Administrative Remedy Procedures reveals that plaintiff filed only one ARP, on August 3, 2022.  *Id.* ¶¶ 1, 3.  Derr also avers that Evans would have received a copy of the form dismissing the ARP for procedural reasons, with instructions to refile it within fifteen days.  *Id.* ¶ 6.

Kristina M. Donnelly, Special Assistant to the Director of Patuxent Institution, also submitted a Declaration.  ECF 28-8.  She avers that a search of the database of records from the Headquarters Administrative Remedy Procedure and Inmate Grievance Program Unit revealed no record that an appeal of an ARP was filed by Evans with respect to the incident at issue.  *Id.* ¶¶ 2, 4.

## II.  Standard of Review

### A.

As noted, the Motion is styled as a motion to dismiss under Fed. R. Civ. P. 12(b)(6) or, in the alternative, for summary judgment under Fed. R. Civ. P. 56.  A motion styled in this manner implicates the Court's discretion under Rule 12(d) of the Federal Rules of Civil

Procedure.  *See Kensington Vol. Fire Dept., Inc. v. Montgomery Cty.*, 788 F. Supp. 2d 431, 436-37 (D. Md. 2011).

Ordinarily, a court "is not to consider matters outside the pleadings or resolve factual disputes when ruling on a motion to dismiss." *Bosiger v. U.S. Airways, Inc.*, 510 F.3d 443, 450 (4th Cir. 2007).  However, under Rule 12(b)(6), a court, in its discretion, may consider matters outside of the pleadings, pursuant to Rule 12(d).  If the court does so, "the motion must be treated as one for summary judgment under Rule 56," but "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion."  Fed. R. Civ. P. 12(d); *see Adams Housing, LLC v. The City of Salisbury, Maryland*, 672 F. App'x 220, 222 (4th Cir. 2016) (per curiam).

Notably, when, as here, the movant expressly captions its motion "in the alternative," as one for summary judgment, and submits matters outside the pleadings for the court's consideration, the parties are deemed to be on notice that conversion under Rule 12(d) may occur; the court "does not have an obligation to notify parties of the obvious." *Laughlin v. Metro. Wash. Airports Auth.*, 149 F.3d 253, 261 (4th Cir. 1998).

The Fourth Circuit has articulated two requirements for proper conversion of a Rule 12(b)(6) motion to a Rule 56 motion: notice and a reasonable opportunity for discovery.  *See Greater Balt. Ctr. for Pregnancy Concerns, Inc. v. Mayor of Balt*, 721 F.3d 264, 281 (4th Cir. 2013).  As indicated, when the movant expressly captions its motion "in the alternative" as one for summary judgment and submits matters outside the pleadings for the court's consideration, the parties are deemed to be on notice that conversion under Rule 12(d) may occur.  *See Moret v. Harvey*, 381 F.Supp.2d 458, 464 (D. Md. 2005).  Evans was provided such notice by the

defendants.  *See* ECF 28.  He also received notification from the Clerk of defendants' dispositive filing and of his right to respond, with exhibits and declarations.  ECF 30.  Indeed, Evans filed a response in opposition to the Motion, as well as correspondence construed as supplemental oppositional responses. *See* ECF 32, ECF 37, ECF 38, ECF 41.

Nevertheless, summary judgment is generally inappropriate "where the parties have not had an opportunity for reasonable discovery." *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 448-49 (4th Cir. 2011); *see Putney v. Likin*, 656 F. App'x 632, 638 (4th Cir. 2016) (per curiam); *McCray v. Maryland Dep't of Transportation*, 741 F.3d 480, 483 (4th Cir. 2015).  However, "the party opposing summary judgment 'cannot complain that summary judgment was granted without discovery unless that party had made an attempt to oppose the motion on the grounds that more time was needed for discovery.'" *Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 244 (4th Cir. 2002) (quoting *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 961 (4th Cir. 1996)); *see also Dave & Buster's, Inc. v. White Flint Mall, LLLP*, 616 F. App'x 552, 561 (4th Cir. 2015).

To raise adequately the issue that discovery is needed, the nonmovant typically must file an affidavit or declaration pursuant to Rule 56(d) (formerly Rule 56(f)), explaining why, "for specified reasons, it cannot present facts essential to justify its opposition," without needed discovery. Fed. R. Civ. P. 56(d);  *see Harrods*, 302 F.3d at 244-45 (discussing affidavit requirement of former Rule 56(f)). "[T]o justify a denial of summary judgment on the grounds that additional discovery is necessary, the facts identified in a Rule 56 affidavit must be 'essential to [the] opposition.'" *Scott v. Nuvell Fin. Servs., LLC*, 789 F. Supp. 2d 637, 641 (D. Md. 2011) (alteration in original) (citation omitted), *rev'd on other grounds sub nom. Gardner*

*v. Ally Fin., Inc.*, 514 F. App'x 378 (4th Cir. 2013). A nonmoving party's Rule 56(d) request for additional discovery is properly denied "where the additional evidence sought for discovery would not have by itself created a genuine issue of material fact sufficient to defeat summary judgment." *Strag v. Bd. of Trs., Craven Cmty. Coll.*, 55 F.3d 943, 954 (4th Cir. 1995); *see McClure v. Ports,* 914 F.3d 866, 874-75 (4th Cir. 2019); *Gordon v. CIGNA Corp.,* 890 F.3d 463, 479 (4th Cir. 2018); *Amirmokri v. Abraham,* 437 F. Supp. 2d 414, 420 (D. Md. 2006), aff'd, 266 F. App'x 274 (4th Cir. 2008), *cert. denied*, 555 U.S. 885 (2008).

If a nonmoving party believes that further discovery is necessary before consideration of summary judgment, the party who fails to file a Rule 56(d) affidavit does so at his peril, because "'the failure to file an affidavit . . . is itself sufficient grounds to reject a claim that the opportunity for discovery was inadequate.'" *Harrods,* 302 F.3d at 244 (citations omitted). But, the nonmoving party's failure to file a Rule 56(d) affidavit cannot obligate a court to issue a summary judgment ruling that is obviously premature. And, a court "should hesitate before denying a Rule 56(d) motion when the nonmovant seeks necessary information possessed only by the movant." *Pisano v. Strach*, 743 F.3d 927, 931 (4th Cir. 2014).

Although the Fourth Circuit has placed "'great weight'" on the Rule 56(d) affidavit, and has said that a mere "'reference to Rule 56(f) [now Rule 56(d)] and the need for additional discovery in a memorandum of law in opposition to a motion for summary judgment is not an adequate substitute for [an] affidavit,'" the appellate court has "not always insisted" on a Rule 56(d) affidavit. *Id.* (internal citations omitted). According to the Fourth Circuit, failure to file an affidavit may be excused "if the nonmoving party has adequately informed the district court that the motion is premature and that more discovery is necessary" and the "nonmoving party's objections before the district court 'served as the functional equivalent of an affidavit.'" *Id.* at

244-45 (internal citations omitted); *see also Putney*, 656 F. App'x at 638; *Nader v. Blair*, 549 F.3d 953, 961 (4th Cir. 2008). "This is especially true where, as here, the non-moving party is proceeding pro se." *Putney*, 656 F. App'x at 638.

Evans has not filed an affidavit under Rule 56(d), nor has he requested discovery. Further, defendants have provided Evans with a copy of the ARP filed in his case, his medical records, and the investigative record from the incident. Thus, the Court is satisfied that it is appropriate to address defendants' Motion as one for summary judgment, as this will facilitate resolution of the case.

**B.**

Summary judgment is governed by Fed. R. Civ. P. 56(a), which provides, in part: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-24 (1986); *see also Cybernet, LLC v. David*, 954 F.3d 162, 168 (4th Cir. 2020); *Variety Stores, Inc. Wal-Mart Stores, Inc.*, 888 F.3d 651, 659 (4th Cir. 2018); *Iraq Middle Mkt. Dev. Found v. Harmoosh*, 848 F.3d 235, 238 (4th Cir. 2017). "Applying that standard, the facts and all reasonable inferences drawn therefrom must be viewed in the light most favorable to the nonmoving party." *Aleman v. City of Charlotte*, 80 F.4th 264, 283–84 (4th Cir. 2023); *see Lujan v. Nat'l Wildlife Fed.*, 497 U.S. 871, 888 (1990); *Dewberry Eng'rs Inc. v. Dewberry Grp., Inc.*, 77 F.4th 265, 277 (4th Cir. 2023); *Knibbs v. Momphard*, 30 F.4th 200, 206 (4th Cir. 2022); *Walker v. Donahoe*, 3 F.4th 676, 682 (4th Cir. 2021); *Hannah P. v. Coats*, 916 F.3d 327, 336 (4th Cir. 2019).

To avoid summary judgment, the nonmoving party must demonstrate that there is a genuine dispute of material fact so as to preclude the award of summary judgment as a matter of law. *Ricci*

*v. DeStefano*, 557 U.S. 557, 585-86 (2009); *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585-86 (1986); *see also Gordon v. CIGNA Corp.*, 890 F.3d 463, 470 (4th Cir. 2018).  The Supreme Court has  clarified that this does not mean that every factual dispute will defeat the motion.  "By its very terms,  this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is  that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 247-48 (1986) (emphasis in original).  A fact is "material" if it "might affect the outcome of the suit under the governing law." *Id.*  at 248.

There is a genuine dispute as to material fact "if the evidence is such that a reasonable jury  could return a verdict for the nonmoving party." *Id.*; *see CTB, Inc. v. Hog Slat, Inc.*, 954 F.3d 647, 658 (4th Cir. 2020); *Variety Stores, Inc.*, 888 F.3d at 659; *Sharif v. United Airlines, Inc.,* 841 F.3d  199, 2014 (4th Cir. 2016); *Raynor v. Pugh*, 817 F.3d 123, 130 (4th Cir. 2016); *Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013).  On the other hand, "the mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252; *see McAirlaids, Inc. v. Kimberly-Clark Corp.*, 756 F.3d 307, 310 (4th Cir. 2014).

"A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc*., 346 F.3d 514, 525 (4th Cir. 2003) (alteration in original) (quoting former Fed. R. Civ. P. 56(e)), *cert. denied*, 541 U.S. 1042 (2004). And, the Court must view the evidence in the light most favorable to the nonmovant, and draw all reasonable inferences in his favor, "without weighing the evidence or  assessing the witnesses' credibility." *Dennis v. Columbia Colleton Med. Ctr., Inc*., 290 F.3d

639, 645 (4th Cir. 2002); *see Hannah P. v. Coats*, 916 F.3d 327, 336 (4th Cir. 2019); *Variety Stores, Inc.*, 888 F.3d at 659; *Gordon*, 890 F.3d at 470; *Roland v. United States Citizenship & Immigration Servs.*, 850 F.3d 625, 628 (4th Cir. 2017); *Lee v. Town of Seaboard*, 863 F.3d 323, 327 (4th Cir. 2017); *FDIC v. Cashion*, 720 F.3d 169, 173 (4th Cir. 2013).

Notably, "to avoid summary judgment, the non-moving party's evidence must be of sufficient quantity and quality as to establish a genuine issue of material fact for trial. Fanciful inferences and bald speculations of the sort no rational trier of fact would draw or engage in at trial need not be drawn or engaged in at summary judgment." *Local Union 7107 v. Clinchfield Coal Co.*, 124 F.3d 639, 640 (4th Cir. 1997). In other words, the nonmovant "must rely on more than conclusory allegations, mere speculation, the building of one inference upon another, or the mere existence of a scintilla of evidence." *Humphreys & Partners Architects, L.P. v. Lessard Design, Inc.*, 790 F.3d 532, 540 (4th Cir. 2015) (internal quotation marks omitted). In short, "[u]nsupported speculation is not sufficient to defeat a summary judgment motion." *Felty v. Graves-Humphreys Co.*, 818 F.2d 1126, 1128 (4th Cir. 1987); *see Reddy v. Buttar*, 38 F.4th 393, 403–04 (4th Cir. 2022); *CTB, Inc.*, 954 F.3d at 659; *Harris v. Home Sales Co.*, 499 F. App'x 285, 294 (4th Cir. 2012).

Critically, the district court's "function" is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson,* 477 U.S. at 249; *accord Guessous v. Fairview Prop. Inv., LLC*, 828 F.3d 208, 216 (4th Cir. 2016). Thus, the trial court may not make credibility determinations on summary judgment. *Kellen v. Lott*, No. 21-6928, 2022 WL 2093849, at *1 (4th Cir. June 10, 2022) (per curiam); *Betton v. Belue*, 942 F.3d 184, 190 (4th Cir. 2019); *Wilson v. Prince George's Cty.*, 893 F.3d 213, 218-19 (4th Cir. 2018); *Jacobs v. N.C. Administrative Office of the Courts*, 780 F.3d 562, 569 (4th Cir. 2015); *Mercantile*

*Peninsula Bank v. French*, 499 F.3d 345, 352 (4th Cir. 2007); *Black & Decker Corp. v. United States*, 436 F.3d 431, 442 (4th Cir. 2006); *Dennis*, 290 F.3d at 644-45. Therefore, in the face of conflicting evidence, such as competing affidavits, summary judgment is generally not appropriate, because it is the function of the factfinder to resolve factual disputes, including matters of witness credibility.

Testimony that is based on personal knowledge or firsthand experience can constitute evidence of disputed material facts, even if it is uncorroborated and self-serving. *Lovett v. Cracker Barrel Old Country Store, Inc.*, 700 Fed. App'x 209, 212 (4th Cir. 2017). Indeed, "'a great deal of perfectly admissible testimony fits'" the "'description'" of "'self-serving.'" *Cowgill v. First Data Technologies, Inc.*, 41 F. 4th 370, 383, n.8 (4th Cir. 2022) (citing *United States v. Sklena*, 692 F.3d 725, 733 (7th Cir. 2012)). Thus, "self-serving affidavits offered by the non-movant can sometimes defeat summary judgment." *Pfaller v. Amonette*, 55 F.4th 436, 450 (4th Cir. 2022); *see Harrell v. DeLuca*, 97 F.4th 180, 187 (4th Cir. March 27, 2024) (recognizing that the self-serving declaration of a nonmovant "can defeat summary judgment"); *Mann v. Failey*, 578 F. App'x 267, 273 n.2 (4th Cir. 2014) (per curiam) (unpublished but orally argued) ("[T]he record could defeat summary judgment even if the evidence consisted exclusively of so-called 'self-serving' declarations from [the nonmovant] himself."); *see also* Fed. R. Civ. P. 56(c)(1)(A), (4).

In contrast, self-serving statements made by the movant are not sufficient. *Pfaller*, 55 F.4th at 450 ("[H]ere it is the *movant . . .* who offers his own statements as the key evidence in support of summary judgment. That is insufficient.") (emphasis in original); *Knibbs*, 30 F.4th at 222 (stating that "the dissent, like the district court, contravenes Rule 56 by accepting [the movant's] self-serving statements and reading the evidence in the light most favorable to *him*.") (emphasis in original). In any event, "[w]hen opposing parties tell two different stories, one of which is

blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

Because plaintiff is self-represented, his submissions are liberally construed. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Fields v. Federal Bureau of Prisons*, ___ F.4th ___, 2024 WL 3529034, at *1 (4th Cir. July 25, 2024); *Shaw v. Foreman*, 59 F.4th 121, 126 (4th Cir. 2023). But, the Court must also abide by the "'affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial.'" *Bouchat*, 346 F.3d at 526 (internal quotation marks omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778–79 (4th Cir. 1993), and citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986)).

In sum, to counter a motion for summary judgment, there must be a genuine dispute as to material fact. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. at 585–86. "A court can grant summary judgment only if, viewing the evidence in the light most favorable to the non-moving party, the case presents no genuine issues of material fact and the moving party demonstrates entitlement to judgment as a matter of law." *Iraq Middle Mkt. Dev. Found. v. Harmoosh*, 848 F.3d 235, 238 (4th Cir. 2017).

### III. Discussion

Defendants seek dismissal under Fed. R. Civ. P. 12(b)(6) or summary judgment under Rule 56. As noted, I have determined to construe the Motion under Rule 56.

Defendants argue that (1) Evans has failed to exhaust administrative remedies; (2) Evans fails to state a claim; (3) defendants did not fail to provide Evans with adequate medical care, in violation of his constitutional rights; and (4) Evans was properly housed in general population.

Because I shall grant the Motion based on Evans's failure to exhaust administrative remedies, I need not address defendants' remaining arguments.

The Prisoner Litigation Reform Act ("PLRA") provides, in pertinent part, 42 U.S.C. § 1997e(a):

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

For purposes of the PLRA, "the term 'prisoner' means any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program." 42 U.S.C. § 1997e(h). The phrase "prison conditions" encompasses "all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002); *see Chase v. Peay*, 286 F. Supp. 2d 523, 528 (D. Md. 2003), *aff'd*, 98 F. App'x 253 (4th Cir. 2004).

The doctrine governing exhaustion of administrative remedies with respect to the PLRA has been well established through administrative law jurisprudence. It provides that a plaintiff is not entitled to judicial relief until the prescribed administrative remedies have been exhausted. *Woodford v. Ngo*, 548 U.S. 81, 88 (2006); *Johnson v. Robinette*, 105 F.4th 99, 108 (4th Cir. 2024).

"The statute's exhaustion requirement is strict . . . ." *Griffin v. Bryant*, 56 F.4th 328, 335 (4th Cir. 2022). Indeed, the "exhaustion requirement means what it says[.]" *Williams v. Canvajal*, 63 F.4th 279, 285 (4th Cir. 2023). In other words, exhaustion is mandatory, and a court ordinarily may not excuse a failure to exhaust. *Ross v. Blake*, 578 U.S. 632, 639 (2016) (citing *Miller v.*

*French*, 530 U.S. 327, 337 (2000) (explaining "[t]he mandatory 'shall'. . . normally creates an obligation impervious to judicial discretion")); *see Jones v. Bock*, 549 U.S. 199, 220 (2007).

The PLRA's exhaustion requirement serves several purposes.  These include "allowing a prison to address complaints about the program it administers before being subjected to suit, reducing litigation to the extent complaints are satisfactorily resolved, and improving litigation that does occur by leading to the preparation of a useful record."  *Bock*, 549 U.S. at 219; *see Moore v. Bennette*, 517 F.3d 717, 725 (4th Cir. 2008) (recognizing that exhaustion provides prison officials with the opportunity to respond to a complaint through proper use of administrative remedies).  It is designed so that prisoners pursue administrative grievances until they receive a final denial of the claims, appealing through all available stages in the administrative process so that the agency reaches a decision on the merits.  *Chase*, 286 F. Supp. at 530; *see Gibbs v. Bureau of Prisons*, 986 F. Supp. 941, 943-44 (D. Md. 1997) (dismissing a federal prisoner's lawsuit for failure to exhaust, where plaintiff did not appeal his administrative claim through all four stages of the BOP's grievance process); *see also Booth v. Churner*, 532 U.S. 731, 735 (2001) (affirming dismissal of prisoner's claim for failure to exhaust where he "never sought intermediate or full administrative review after prison authority denied relief"); *Thomas v. Woolum*, 337 F.3d 720, 726 (6th Cir. 2003) (noting that a prisoner must appeal administrative rulings "to the highest possible administrative level"); *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002) (prisoner must follow all administrative steps to meet the exhaustion requirement so that the agency addresses the merits of the claim, but need not seek judicial review), *cert. denied*, 537 U.S. 949 (2002).

Exhaustion applies in § 1983 cases.  *Williams v. Carvajal*, 63 F.4th 279, 285 (4th Cir. 2023).  Ordinarily, an inmate must follow the required procedural steps in order to exhaust his administrative remedies.  *Moore*, 517 F.3d at 725, 729; *see Langford v. Couch*, 50 F. Supp. 2d

544, 548 (E.D. Va. 1999) ("[T]he . . . PLRA amendment made clear that exhaustion is now mandatory."). Exhaustion requires completion of "the administrative review process in accordance with the applicable procedural rules, including deadlines." *Woodford*, 548 U.S. at 88. This requirement is one of "proper exhaustion of administrative remedies, which 'means using all steps that the agency holds out, and doing so *properly* (so that the agency addresses the issues on the merits).'" *Id.* at 91 (quoting *Pozo*, 286 F.3d at 1024) (emphasis in original).

However, administrative exhaustion under § 1997e(a) is not a jurisdictional requirement and does not impose a heightened pleading requirement on the prisoner. Rather, the failure to exhaust administrative remedies is an affirmative defense to be pleaded and proven by defendants. *See Bock*, 549 U.S. at 215-216; *Anderson v. XYZ Corr. Health Servs., Inc.*, 407 F.2d 674, 682 (4th Cir. 2005). Moreover, "the exhaustion requirement does not operate as an absolute bar to prison litigation in federal court . . . ." *Griffin*, 56 F.4th at 335. The court is "obligated to ensure that any defects in [administrative] exhaustion were not procured from the action or inaction of prison officials." *Aquilar-Avellaveda v. Terrell*, 478 F.3d 1223, 1225 (10th Cir. 2007); *see Kaba v. Stepp*, 458 F.3d 678, 684 (7th Cir. 2006).

Of import, an inmate need only exhaust "available" remedies. 42 U.S.C. § 1997e(a); *see Ross v. Blake*, 578 U.S. at 636; *Younger v. Crowder*, 79 F.4th 373, 379 (4th Cir. 2023). The Fourth Circuit addressed the meaning of "available" remedies in *Moore*, 517 F. 3d at 725, stating: "[A]n administrative remedy is not considered to have been available if a prisoner, through no fault of his own, was prevented from availing himself of it." *See also Griffin*, 56 F.4th at 335; *Aquilar-Avellaveda*, 478 F. 3d at 1225; *Kaba*, 458 F. 3d at 684. Conversely, a prisoner does not exhaust all available remedies simply by failing to follow the required steps so that remedies that once were available to him are no longer available. *See Woodford*, 548 U.S. 89. Therefore, to be entitled

to bring suit in federal court, a prisoner must have utilized all available remedies "in accordance with the applicable procedural rules," so that prison officials have been given an opportunity to address the claims administratively. *Id.* at 87. Having done that, a prisoner has exhausted his available remedies, even if prison employees do not respond. *See Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006).

In *Ross*, 578 U.S. at 635, the Supreme Court rejected a "freewheeling approach to exhaustion as inconsistent with the PLRA." In particular, it rejected a "special circumstances" exception to the exhaustion requirement. *Id.* at 637. But, it reiterated that "[a] prisoner need not exhaust remedies if they are not 'available.'" *Id.* at 635-36. And, "an administrative remedy is not considered to have been available if a prisoner, through no fault of his own, was prevented from availing himself of it." *Moore*, 517 F.3d at 725.

The *Ross* Court outlined three circumstances when an administrative remedy is unavailable and an inmate's duty to exhaust available remedies "does not come into play." *Ross*, 578 U.S. at 643. First, "an administrative procedure is unavailable when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates." *Id.* Second, "an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use. In this situation, some mechanism exists to provide relief, but no ordinary prisoner can discern or navigate it." *Id.* at 643-44. The third circumstance is when "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id.* at 644; *see also Caravajal*, 63 F.4th at 290.

The DPSCS has an established "administrative remedy procedure" ("ARP") for use by Maryland State prisoners for "inmate complaint resolution." *See generally* Md. Code (2017 Repl.

Vol.), §§ 10-201 *et seq*. of the Correctional Services Article ("C.S."); Code of Maryland Regulations ("COMAR") 12.07.01B(1) (defining ARP).  The grievance procedure applies to the submission of a "grievance against an official or employee of the Division of Correction [DOC]. . . ."  C.S. § 10-206(a).

In Maryland, there is an established administrative remedy procedure that applies to all Maryland prisons.  COMAR 12.07.01.05B 2.28.01.  Regulations promulgated by DPSCS concerning the administrative remedy procedure define a "grievance" to include a "complaint of any individual in the custody of the [DOC] against any officials or employees of the [DOC] arising from the circumstances of custody or confinement."  COMAR 12.07.01.01(B)(7).  To pursue a grievance, a prisoner confined in a Maryland prison may file a grievance with the IGO against any DOC official or employee.  C.S. § 10-206(a).

When the ARP process provides a possible remedy, it must be followed and completed before an inmate may file a grievance with the IGO.  However, if the prison has a grievance procedure that is approved by the IGO, the prisoner must first follow the institutional ARP process before filing a grievance with the IGO.  *See* C.S. § 10-206(b).

The ARP process consists of multiple steps.  For the first step, a prisoner is required to file his initial ARP with his facility's "managing official," COMAR 12.02.28.02(D)(1), which is defined by COMAR 12.02.28.02(B)(14) as "the warden or other individual responsible for management of the correctional facility" and defined under C.S. § 1-101(k) "as the administrator, director, warden, superintendent, sheriff, or other individual responsible for the management of a correctional facility."  Moreover, the ARP request must be filed within 30 days of the date on which the incident occurred, or within 30 days of the date the prisoner first gained knowledge of the incident or injury giving rise to the complaint, whichever is later.  COMAR 12.02.28.09(B).

17

The second step in the ARP process occurs if the managing official denies a prisoner's initial ARP or fails to respond to the ARP within the established time frame. The prisoner has 30 days to file an appeal to the Commissioner of Correction. COMAR 12.02.28.14(B)(5).

If the Commissioner of Correction denies an appeal, the prisoner has 30 days to file a grievance with the IGO. COMAR 12.02.28.18; C.S. § 10-206(a); COMAR 12.07.01.05(B).[1] When filing with the IGO, a prisoner is required to include copies of the following: the initial request for administrative remedy, the warden's response to that request, a copy of the ARP appeal filed with the Commissioner of Correction, and a copy of the Commissioner's response. COMAR 12.07.01.04(B)(9)(a).

If the grievance is determined to be "wholly lacking in merit on its face," the IGO may dismiss it "without a hearing. . . ." C.S. § 10-207(b)(1); *see also* COMAR 12.07.01.06(B). An order of dismissal constitutes the final decision of the Secretary of DPSCS for purposes of judicial review. C.S. § 10-207(b)(2)(ii). However, if a hearing is deemed necessary by the IGO, the hearing is conducted by an administrative law judge with the Maryland Office of Administrative Hearings. *See* C.S. § 10-208; COMAR 12.07.01.07-.08. The conduct of such hearings is governed by statute. *See* C.S. § 10-208; COMAR 12.07.01.07(D); *see also* Md. Code § 10-206(a)(1) of the State Government Article.

A decision of the administrative law judge denying all relief to the inmate is considered a final agency determination. C.S. § 10-209(b)(1)(ii); COMAR 12.07.01.10(A)(2). However, if the ALJ concludes that the inmate's complaint is wholly or partly meritorious, the decision constitutes a recommendation to the Secretary of DPSCS, who must make a final agency determination within

---

[1] If the Commissioner fails to respond, the grievant shall file an appeal within 30 days of the date the response was due. COMAR 12.07.01.05(B)(2).

fifteen days after receipt of the proposed decision of the administrative law judge.  *See* C.S. § 10-209(b)(2),(c); COMAR 12.07.01.10(B).

Defendants assert that Evans failed to exhaust his administrative remedies.  ECF 28-1 at 6.  To support their assertion, defendants submitted several exhibits: the Declaration of Jason Derr, the Acting Litigation Coordinator at ECI, who avers that Evans filed only one ARP (ECF 28-6) regarding the incident at issue, and it was dismissed, with instructions to refile it; the Declaration of Kristina Donnelly, the Special Assistant to the Director of Patuxent Institution, who avers that there is no record that Evans filed an appeal of an ARP regarding the incident; and a copy of the ARP submitted by Evans that was dismissed.  ECF 28-6, ECF 28-7, and ECF 28-8.  Although Evans was told to refile his ARP (ECF 28-7), the Special Assistant's Declaration states that there is no record that Evans filed an appeal of an ARP regarding the incident.  ECF 28-8.

The ARP document itself is also noteworthy.  *See* ECF 28-6.  It is stamped "Dismissed for procedural reasons" and is also stamped as follows:  "Additional information is needed to investigate your request.  Please resubmit by:  8/23 and include the following information."  *Id.* at 1.  And, there is a handwritten notation as to the requested information.  *Id.*  In particular, Evans was told to provide his housing unit and whether he notified a supervisor.  *Id.*  In addition, he was asked what remedy he was seeking.  *Id.*

The evidence submitted by defendants establishes that Evans filed an ARP but did not further pursue his administrative remedies by either filing a new ARP as directed or filing an appeal.  Thus, defendants met their initial burden of demonstrating the absence of a genuine issue of material fact as to exhaustion of administrative remedies.  *See Bouchart*, 346 F.3d at 525 (citing *Celotex Corp.*, 477 U.S. at 323). The burden then shifted to Evans to demonstrate the existence of

a dispute concerning a material fact. *See Bouchart*, 346 F.3d at 525 (citing *Matsushita Elec. Indus. Co.*, 475 U.S. at 586-87).

Evans filed a response in opposition to defendants' Motion. But, he did not address the claim of failure to exhaust. ECF 32. In his unverified Complaint, Evans states that he filed a grievance but "never got a response," and that he "could not appeal do [sic] to I never got a response to the grievance I filed." ECF 1 at 2. Evans also filed unverified correspondence, construed as supplements to his opposition response, in which he states that he "tried to use the 'ARP' process. I in fact was called in office to speak to Lt. Clayton who said he was going to 'hang on' to the 'ARP' and look into the incident. During that time, I was transferred back to Wicomico County detention center pending trial. Therefore, ARP was not signed off on or decided on." ECF 38 at 2. In further correspondence, Evans asserts: "Did I try to use the 'ARP' process. Absolutely. However, I don't know what became of the 'ARP' do [sic] to after I filed this civil suit my parole lets [sic] just say 'magically' reinstated without even being seen by the parole commission." ECF 41 at 13.

It is undisputed that Evans did not pursue his administrative remedies beyond filing a single ARP, which was dismissed. ECF 1, 28-7. While ECI's Acting Litigation Coordinator declares that "[p]er the ARP handling procedure, Mr. Evans would have received a copy" of the ARP after it was dismissed, ECF 28-7 at 2, Evans states that the ARP was "never signed off on or decided on" and that he does not know what happened to the ARP after he filed it. ECF 38 at 2 and ECF 41 at 13. However, Evans's unverified statements that he never received a response to his initial ARP do not refute defendants' evidence that only one ARP was filed and that the ARP was dismissed with instructions to refile. Even if Evans did not receive a copy of the dismissed ARP,

there is no indication that he was prevented from filing a new ARP or taking further action to comply with the ARP process.

Viewing the evidence in the light most favorable to Evans, there is no way to avoid the determination that he has presented nothing more than a conclusory assertion, and has not "set forth specific facts showing that there is a genuine issue for trial." *Bouchat v. Baltimore Ravens Football Club, Inc*., 346 F.3d at 525 (citations omitted).  Evans has not presented conflicting evidence, such as competing affidavits or written documentation. *See CTB, Inc*., 954 F.3d at 658-59.

Accordingly, defendants' Motion will be granted on the basis that Evans failed to exhaust his administrative remedies.

## VI.  Conclusion

For the foregoing reasons, I shall grant summary judgment in favor of defendants.

An Order follows.

Date: July 29, 2024                                    _____/s/_____

                                                                        Ellen L. Hollander
                                                                        United States District Judge

21